IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SEBASTIAN MELENDEZ BREGAL,          )
                                    )
           Petitioner,          )
                                    )
    v.                            )          1:25-cv-2439 (LMB/IDD)
                                    )
KRISTI NOEM, et al.,                )
                                    )
           Respondents.         )

ORDER

Petitioner Sebastian Melendez Bregal ("Melendez Bregal"), a native and citizen of
Honduras, has filed a four-count Amended Petition for Writ of Habeas Corpus ("Petition") under
28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department
of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since
September 9, 2025. Specifically, he alleges that his re-detention under 8 U.S.C. § 1231 and
implementing regulations is unlawful and violates his due process rights under the Fifth
Amendment (Count I), the Immigration and Nationality Act (Count II), the Accardi doctrine,
articulated by United States ex rel. Accardi v. Shaghnessy, 347 U.S. 260 (1954) (Count III), and
the Administrative Procedure Act (Count IV).

Melendez Bregal is currently detained at the Farmville Detention Center, which is within
this Court's jurisdiction and the basis upon which he is suing Jeffrey Crawford, the warden of the
Farmville Detention Center. Melendez Bregal has also sued Todd Lyons, the Acting Director of
ICE; Russell Hott, the Director of the Washington ICE Field Office; Kristi Noem, the DHS
Secretary; and Pamela Bondi, the Attorney General (collectively, "the federal respondents"). For
the reasons discussed in this Order, the Court finds that Melendez Bregal's detention violates his

due process rights under the Fifth Amendment. Accordingly, his Petition will be granted as to

Count I, and respondents will be ordered to release him from custody, subject to the conditions

of release imposed by DHS on March 4, 2021.[1]

I.

According to his Petition, Melendez Bregal has resided in the United States since July

2019. [Dkt. No. 15] at ¶ 26. He lives with his partner and her two children in Virginia, and has

"made a life for himself in Virginia as an upstanding member of the community[.]" Id. at ¶ 7.

Melendez Bregal obtained a driver's license, paid taxes, and was first employed at the University

of Virginia hospital and then employed by Amazon to make deliveries with an employment

authorization recently renewed until the year 2030. Id.

Because Melendez Bregal's immigration history is substantively different from those of

other petitioners this Court has recently received, it is summarized below. Melendez Bregal fled

persecution in Honduras and traveled to the United States to seek asylum in 2019. Id. at ¶ 26. In

Honduras, he "advocated for the ancestral rights of his Afro-Indigenous Garifuna family and

community and participated in peaceful protests against the regime of President Juan Orlando

Hernandez." Id. at ¶ 2. Because of his ethnic and racial identity, and his political beliefs,

Melendez Bregal "suffered horrific abuse at the hands of Honduran security forces." Id. Customs

and Border Patrol ("CBP") officers encountered Melendez Bregal around Presidio, Texas after

he had crossed into the United States from Mexico by swimming across the Rio Grande River.

[Dkt. No. 7-1] at ¶ 6. Melendez Bregal was served with Form I-860, Notice and Order of

Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1)(A). Id. Before he could be removed,

---

[1] Because the Court is granting relief on due process grounds, it need not address Melendez
Bregal's arguments based on the Immigration and Nationality Act, the Accardi doctrine, and the
Administrative Procedure Act.

2

Melendez Bregal expressed a fear of returning to his country and was referred to U.S.

Citizenship and Immigration Services ("USCIS") for a Credible Fear Interview under 8 U.S.C. §

1225(b)(1)(A)(ii). Id. at ¶ 7. While waiting for his Credible Fear Interview, Melendez Bregal

remained detained for the next 20 months, shuffled between multiple detention centers across the

country. [Dkt. No. 15] at ¶ 27. After an asylum officer determined he had a credible fear of

returning to Honduras, Melendez Bregal was issued a Notice to Appear and charged with being

inadmissible to the United States; he was placed into removal proceedings pursuant to 8 U.S.C. §

1225(b)(1)(B) and remained detained. [Dkt. No. 7-1] at ¶ 8.

On December 30, 2020, an Immigration Judge denied Melendez Bregal's application for

asylum, withholding of removal, and protection under the Convention Against Torture. [Dkt. No.

15] at ¶ 28. On January 29, 2021, Melendez Bregal filed a Motion to Reopen and Reconsider

with the Immigration Judge, providing new corroborative evidence that was previously

unavailable due to the COVID-19 pandemic. Id. at ¶ 29. On January 30, 2021, the Immigration

Judge's Order of Removal became final. Id. at ¶ 30. On March 4, 2021, ICE released Melendez

Bregal on supervision. Id. at ¶ 31; see also [Dkt. No. 15-1] at 2. On March 29, 2021, the

Immigration Judge denied his Motion to Reopen and Reconsider. [Dkt. No. 15] at ¶ 32. On April

27, 2021, Melendez Bregal appealed that decision to the Board of Immigration Appeals ("BIA"),

and requested a Stay of Removal. Id. The BIA did not adjudicate the Stay of Removal at that

time. Id.

While the appeal was pending before the BIA, Melendez Bregal "consistently complied

with all conditions of his supervised release." Id. at ¶ 33. For over four years, he attended

periodic check-in appointments, first in New Orleans, Louisiana, and then at the Richmond,

Virginia field office after he settled in Charlottesville. Id. On October 8, 2025, Melendez Bregal

reported to the Richmond, Virginia ICE field office for his regularly scheduled check-in appointment; however, it was not a routine check-in. Id. at ¶ 34. Officers at the field office fingerprinted Melendez Bregal, which was not typical at his check-in appointments. Id. When Melendez Bregal attempted to call his lawyer, he was ordered to "abruptly hang up and end the call." Id. Melendez Bregal was subsequently arrested by ICE agents without any explanation, and transferred into custody at the Farmville Detention Center. Id. at ¶¶ 34-36.[2] On October 10, 2025, the BIA granted Melendez Bregal's Motion for Stay of Removal, which had been pending for over four years. Id. at ¶ 38; see also [Dkt. No. 15-2] at 2. His appeal remains pending. Id.

That same day, Melendez Bregal's attorney began attempting to communicate with ICE to "politely inquire as to why he was detained." [Dkt. No. 15] at ¶ 39; see also [Dkt. No. 15-3] at 2-5. On October 26, 2025, an ICE official replied, stating that "ICE is not granting releases at this time." See id. On October 27, 2025, Assistant Field Office Director James Mullan also replied, stating: "ICE will not consider bond or release on parole at this time." [Dkt. No. 15] at ¶ 40; see also [Dkt. No. 15-4] at 2. According to his counsel, Melendez Bregal suffers from claustrophobia and was previously diagnosed by a detention center therapist with Post-Traumatic Stress Disorder and Anxiety; however, he is not receiving any mental health services at the Farmville Detention Center, nor is he receiving the sleep medication he has been prescribed to help with his insomnia. [Dkt. No. 15] at ¶ 44.

---

[2] According to Melendez Bregal's Amended Petition, when he tried to ask for an explanation of what was happening and tell the officer he had a pending appeal, the officer said only: "Speak to me in English." [Dkt. No. 15] at ¶ 35. Furthermore, although one officer inquired into who had given the order to detain Melendez Bregal and why, no answer was given. Id. When Melendez Bregal tried to tell different officers about his pending appeal, they responded: "We already know about that." Id.

Melendez Bregal filed his Petition for Writ of Habeas Corpus on December 23, 2025. [Dkt. No. 1]. This Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to "file either a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818 (E.D. Va.), or an Opposition to the Petition discussing the material differences between Ceba Cinta and this Petition." [Dkt. No. 3] at 1. In response, the federal respondents filed an Opposition to Petitioner Melendez Bregal's Petition for a Writ of Habeas Corpus ("Opposition"), arguing that his detention is lawful pursuant to 8 U.S.C. § 1231 and the "well-established standards set forth by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001)." [Dkt. No. 7] at 1. In response to the federal respondents' Opposition, Melendez Bregal filed a Motion to Amend Petition, requesting permission to file an amended Petition, [Dkt. No. 13], which this Court granted, [Dkt. No. 14]. On January 12, 2026, Melendez Bregal filed his Amended Petition. [Dkt. No. 15]. Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

II.

The civil detention of noncitizens based on a final order of removal is governed by 8 U.S.C. § 1231, which prescribes a 90-day "removal period," during which DHS is required to carry out the removal. Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. § 1231(a)(2)). "During the removal period, detention is mandatory." Id. (citing 8 U.S.C. § 1231(a)(2)). Under certain circumstances, including where an individual has been ordered removed based on a criminal conviction, DHS may further extend detention beyond the statutory removal period. See id. at 528-29; 8 U.S.C. § 1231(a)(6).

5

Under DHS regulations, after the 90 days have lapsed, DHS may release an individual upon a finding that he "will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal[.]" 8 C.F.R. § 241.4(d)(1). Furthermore, DHS may revoke the release of a noncitizen if an official determines that:

> (i) The purposes of release have been served;
>
> (ii) The alien violate[d] any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

Id. at § 241.4(l)(2).

"Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole" and "afforded an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." Id. at § 241.4(l)(1).

### III.

The thrust of the federal respondents' Opposition is that because Melendez Bregal is subject to a final order of removal, his detention pursuant to 8 U.S.C. § 1231 is lawful under the "well-established standards set forth by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001)." [Dkt. No. 7] at 2. The Zadvydas Court "established a federal common law rule that detention under [§] 1231(a)(6) was presumptively reasonable during an initial '6-month period.'" Phommachak v. Wesling, No. CV 25-13894-BEM, 2026 WL 157491, at *3 (D. Mass. Jan. 20, 2026) (quoting Zadvydas, 533 U.S. at 700). "'After this 6-month period, once the alien provides

good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.'" Id. (quoting Zadvydas, 533 U.S. at 701). The federal respondents argue that because Melendez Bregal has been detained since October 8, 2025, "he has not been in detention pursuant to § 1231 for six months, and his detention in order to effectuate his final order of removal is presumptively reasonable." [Dkt. No. 7] at 6.

But the pro-detention presumption set forth in Zadvydas does not apply to the facts at hand. The Zadvydas presumption should be read against its factual context: "detention during the first six months following an order of removal is run-of-the-mill and thus insufficiently indicative on its own to suggest that anything unlawful is occurring." Id. at 6. This presumption says little about the case of someone like Melendez Bregal, who was detained for 20 months, then released for almost five years, during which he fully complied with all the terms of his release, and has now been re-detained for about three months for no apparent reason. As at least one federal court has stated: "where, as in Zadvydas, a noncitizen has been detained for fewer than six months following his order or removal (or whatever event triggers the statutory removal period), the Govenrment is entitled to a presumption that detention under section 1231(a)(6) is reasonable. . . . In any other circumstances, there is no special presumption, and the normal habeas rules apply, absent a separate conclusion that Zadvydas should be extended in the typical common law manner." Id. at *7 (internal citations omitted).

The federal respondents argue—in the alternative—that "[e]ven if Zadvydas [did] not squarely govern [p]etitioner's claim," the factors set forth in Mathews v. Eldridge, 424 U.S. 319

(1976) "weigh in favor of continued detention." [Dkt. No. 7] at 8.[3] To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the familiar three-part test articulated in Mathews. Under Mathews, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

The first Mathews factor requires consideration of the private interests affected by the federal respondents' revocation of Melendez Bregal's release. Here, the private interests at stake are "significant and weigh in [Melendez Bregal's] favor, since the private interest affected is [p]etitioner's interest in being free from imprisonment, especially since he has not violated any condition of his supervised release and was dutifully reporting under his supervision requirements." Zhu v. Genalo, 798 F. Supp. 3d 400, 415 n.4 (S.D.N.Y. 2025). And as both parties have acknowledged, "[f]reedom from imprisonment from government custody, detention, or other forms of physical restraint lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

Second, the "risk of an erroneous deprivation" and the "probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, also weigh in

---

[3] The federal respondents appear to misunderstand the argument that Melendez Bregal asserts in his Amended Petition. In their Opposition, the federal respondents argue that under the Mathews factors, Melendez Bregal "would not be entitled to the specialized bond hearing that he seeks." [Dkt. No. 7] at 9. But in his Amended Petition, Melendez Bregal argues that ICE violated his procedural due process rights when they re-detained him without any notice or explanation, as required by its own regulations. [Dkt. No. 15] at 11-13.

8

Melendez Bregal's favor, since "the almost nonexistent procedural protections" provided to

petitioner "markedly increased the risk of an erroneous deprivation of [his] private liberty

interests," Black v. Decker, 103 F.4th 133, 152 (2d Cir. 2024). The federal respondents assert

that the second Mathews factor weighs in their favor because "applicable statutes and regulations

already provide extensive protections to all aliens detained pursuant to § 1231." [Dkt. No. 7] at

11. But the facts in this record show that ICE failed to give Melendez Bregal meaningful notice

of the basis of its revocation of his release, in violation of the very regulations to which the

federal respondents cite. As discussed above, when DHS revokes a noncitizen's release, the

noncitizen "will be notified of the reasons for revocation[,]" and will be "afforded an initial

informal interview . . . to afford the [noncitizen] an opportunity to respond to the reasons for

revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). Here, ICE failed to provide

Melendez Bregal and his counsel, even after both requested information from ICE multiple

times, either with a Notice of Revocation or records documenting the decision to re-detain him.

[Dkt. No. 17] at 5-6. In sum, Melendez Bregal received no process before being re-detained, in

violation of ICE's own regulations and the Due Process Clause.[4] Zhu, 798 F. Supp. 3d at 414;

---

[4] As Melendez Bregal correctly argues in his Reply to Opposition to Petition for Writ of Habeas Corpus, the federal respondents have failed to provide any explanation for the revocation of his release pursuant to 8 C.F.R. § 241.4(l). [Dkt. No. 17] at 6-7. First, the federal respondents offer only a post-hoc declaration from Assistant Field Office Director Charles M. Byrne, who states that "On October 8, 2025, ERO (Enforcement and Removal Operations) detained [p]etitioner pursuant to the administratively final order of removal and because Fraihat was reversed." [Dkt. No. 7-1] at ¶ 14. Fraihat v. ICE, 445 F. Supp. 3d 709, 742 (C.D. Ca. Apr. 20, 2020), was a class action lawsuit that found that ICE's response to the COVID-19 pandemic constituted "deliberate indifference" to medical needs and "reckless disregard" of known health risks, thus ordering the agency to identify detainees with risk factors and perform custody redeterminations when appropriate." The two certified classes covered by the injunction were detainees with chronic health conditions or other medical conditions making them more susceptible to severe illness and death from COVID-19, and detainees with a severe mental illness or other disability also putting them at heightened risk from the virus. Id. at 740-41. The decision was later reversed in Fraihat v. ICE, 16 F. 4th 613 (9th Cir. 2021). As Melendez Bregal notes, the relevance of Fraihat is

see also Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (emphasizing that "ICE, like any agency, 'has the duty to follow its own federal regulations,'" and holding that ICE's failure to follow the procedures set forth in 8 C.F.R. § 241.4(l) violated the Due Process Clause, since those regulations were "promulgated to protect a fundamental right derived from the Constitution" (citations omitted)); Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 165-67 (W.D.N.Y. 2025) (holding that ICE violated petitioner's due process rights in deciding to re-detain petitioner by failing to follow the procedures set forth in section 241.4, including providing petitioner an interview).

Finally, the government's interest in effectively carrying out lawful orders of removal is legitimate, see [Dkt. No. 7] at 11-12, but that interest would not be undercut by requiring ICE to follow its own rules, which require notice to the noncitizen articulating a legitimate reason for re-detention, and an informal interview. See Perez-Escobar v. Moniz, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) (finding that although ICE provided petitioner with a Notice of Revocation of Release, the absence of a meaningful explanation for the basis of its revocation violated ICE regulations and due process). This conclusion is reinforced by the fact that these procedural safeguards, as discussed above, are required by ICE's own federal regulations. Melendez Bregal does not ask for more than what ICE's regulations require under 8 C.F.R. § 241.4(l). See [Dkt.

---

unclear, as there is no indication that petitioner was a class member; Melendez Bregal does not have a chronic health condition or a severe mental illness or other disability. [Dkt. No. 17] at 7.

The only other suggestion of a reason for Melendez Bregal's re-detention is the assertion that ICE "is ready to move forward with his removal once the [BIA] has lifted the stay on removal." [Dkt. No. 7] at 1. But this explanation glides over the fact that the BIA, on October 10, 2025, granted Melendez Bregal's request for a Stay of Removal, and his appeal remains pending. Such facts severely undermine any suggestion by the federal respondents that Melendez Bregal is being re-detained in order to commence removal proceedings against him. See [Dkt. No. 15-2] at 2.

No. 15] at 13 ("As for the final <u>Mathews</u> factor, burden on the Government, the regulations and procedures ICE has already developed crystallize what they believe the appropriate governmental burden to be. The Court should at a minimum hold them to the position they have developed through notice and comment and other processes used to develop policy and procedures."). Lastly, the fact that the BIA has stayed Melendez Bregal's Order of Removal pending review of his appeal further supports petitioner's argument that there is no reasonable basis for his continued detention, and that there is no lawful order of removal for the government to act on. <u>See</u> [Dkt. No. 15-2] at 2; <u>see supra</u>, at n.4.

IV.

For all these reasons, Melendez Bregal's Amended Petition, [Dkt. No. 15], is GRANTED, and it is hereby

ORDERED that Melendez Bregal be promptly released from custody, with all his personal property, subject to the conditions of release imposed by DHS on March 4, 2021. Melendez Bregal must live at a fixed address which he must provide to the federal respondents[5]; and it is further

ORDERED that the respondents file a notice with the Court confirming petitioner's release.

The Clerk is directed to enter judgment in Melendez Bregal's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 30 day of January, 2026.

/s/

Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

---

[5] If petitioner opts to file a pleading in this civil action notifying the federal respondents of his fixed address, petitioner should file that pleading under seal.